

# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>WC-2024-0581 |
| **Plaintiff**<br>JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC<br>v.<br>Robert Carver, Jr. a/k/a Robert G. Carver et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Erika L. Vogel |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>Harmon Law Offices PC<br>150 California Street<br>Newton MA 02458 |
| McGrath Judicial Complex<br>Washington County<br>4800 Tower Hill Road<br>Wakefield RI 02879<br>(401) 782-4121 | **Address of the Defendant**<br>P.O. Box 55, Ben Franklin Station<br>Washington DC 20044 |

**TO THE DEFENDANT, Internal Revenue Service U.s. Department Of Justice, Tax Division:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 10/15/2024. | /s/ Brenden Oates<br>Clerk |

Witness the seal/watermark of the Superior Court

RECEIVED<br>CTS, NORTHERN REGION<br>TAX DIVISION<br>2024 OCT 29 A 10: 37

| CMN |
|---|
| 2025100101 |

| DJ NUMBER |
|---|
| 5-66-1831 |

**DEPARTMENT OF JUSTICE**

**NEW**

DATE<br>11/01/2024

R E C O R D

**TAX DIVISION**

SC-CMS-1 (revised January 2023)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC | WC-2024-0581 |
| v. | |
| Robert Carver, Jr. a/k/a Robert G. Carver et al. | |
| **Defendant** | |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Internal Revenue Service U.S. Department of Justice, Tax Division, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____

Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised January 2023)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
☐ By delivering said papers to an officer or a managing or general agent.
   Name of person and designation _____
☐ By leaving said papers at the office of the corporation with a person employed therein.
   Name of person and designation _____
☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

| SERVICE DATE: _____ / _____ / _____ | SERVICE FEE $ _____ |
| Month    Day    Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

   On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

   Notary Public: _____
   My commission expires: _____
   Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised January 2023)

**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**WASHINGTON, SC.**                          **C.A. NO.:**

---

**JPMORGAN CHASE BANK, N.A.**
**SUCCESSOR BY MEGER TO CHASE**
**HOME FINANCE, LLC SUCCESSOR BY**
**MERGER TO CHASE MANHATTAN**
**MORTGAGE CORPORATION,**

      **Plaintiff,**

**v.**

**ROBERT G. CARVER, JR. A/K/A**
**ROBERT G. CARVER AND LINDA A**
**CARVER;**

      **Defendants,**

**UNITED STATES OF AMERICA, JOHN**
**B. ENNIS AND OCEANSIDE**
**PROPERTIES, LLC,**

      **Defendants/Parties-in-Interest.**

---

## COMPLAINT IN INTERPLEADER
### (Mortgage Foreclosure Surplus Proceeds)

## INTRODUCTION

JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC

successor by merger to Chase Manhattan Mortgage Corporation ("Plaintiff" or "Chase"), brings

this action, pursuant to R.I. Super. Ct. R. Civ. P. 22, following a foreclosure of a mortgage

concerning real property located at 15 South River Drive, Narragansett, RI 02882 ("Property").

Chase is in possession of surplus funds following the foreclosure, but is unable to distribute such

funds because several parties have made claims to the funds.   As such, any attempt to distribute

the surplus funds informally may subject Chase to claims of liability.   Chase seeks approval to

deposit the surplus funds with the Court (less its reasonable fees and costs) and to be dismissed

from the case and discharged from any further obligation concerning the distribution of such funds.

## JURISDICTION

1. This action is being brought pursuant to the provisions of Rule 22 of the Superior Court Rules of Civil Procedure.

2. Pursuant to R.I.G.L. § 8-2-13, the Superior Court has exclusive original jurisdiction over suits and proceedings brought in equity.

## PARTIES

1. The Plaintiff, JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC successor by merger to Chase Manhattan Mortgage Corporation with a place of business at 3415 Vision Drive, Columbus, OH 43219.

2. Robert G. Carver, Jr. a/k/a Robert G. Carver is believed to be a Rhode Island resident with an address of 15 Riviera Drive, Narragansett, RI 02882.

3. Linda A. Carver is believed to be a Rhode Island resident with an address of 15 Avice Street, Narragansett, RI 02882.

4. The Defendant/Party-in-Interest, John Ennis is a Rhode Island attorney with a place of business at 1200 Reservoir Avenue, Cranston, RI 02920.

5. The Defendant/Party-in-Interest Oceanside Properties, LLC is a limited liability company with a principal place of business of 56 Lawndale Drive, East Greenwich, RI 02818 and has a registered agent of John S. Brunero, Jr., 1070 Main Street, Coventry, RI 02816.

6. Defendant/Party-in-Interest United States of America has pertinent offices at:

   a. United States of America
      Internal Revenue Service – Estate Tax Dept.
      Office of the United States Attorney
      One Financial Plaza, 17th Floor

2

Case Number: WC-2024-0511
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478   Document 1-1   Filed 11/18/24   Page 6 of 43 PageID #: 9

Providence, RI 02903

 b. Internal Revenue Service
   U.S. Department of Justice, Tax Division
   P.O. Box 55, Ben Franklin Station
   Washington, DC 20044

 c. Internal Revenue Service
   Advisory Group Manager
   380 Westminster St, 4th Floor
   Providence, RI 02903

 d. Internal Revenue Service
   Office of the Attorney General of the United States
   950 Pennsylvania Ave NW, Ste 7141
   Washington, DC 20530

## **FACTS**

7. On or about December 1, 1994, Robert G. Carver, Jr. and Linda A. Carver (collectively, the "Carvers") acquired title to the Property by Warranty Deed recorded with the Town of Narragansett Land Evidence Records ("Land Records") at Book 323, Page 688. A true and accurate copy of the deed is attached as **Exhibit A**.

8. On August 25, 1997, the Carvers granted a mortgage in the original principal amount of $102,459.00 to Chase Manhattan Mortgage Corporation as recorded with the Land Records in Book 367, Page 41 ("Mortgage"). A true and accurate redacted copy of the Mortgage is attached as **Exhibit B**.[1]

9. On March 1, 2018, the Carvers and Chase entered into a Loan Modification Agreement modifying the terms of the Mortgage. The Loan Modification was recorded on August

---

[1] For privacy reasons, the loan number and all other personal identifiable information (i.e. social security numbers, account numbers, etc.) appearing on the documents related to the loan have been redacted.

3

16, 2018 in the Land Records at Book 916, Page 661. A true and accurate redacted copy of this Loan Modification is attached as **Exhibit C**.

10. On September 17, 2019, Chases foreclosed the Mortgage by public auction. The Property sold to a third party, Steven Horowitz in the amount of $287,000.00. True and accurate copies of the Foreclosure Deed is attached as **Exhibit D**.

11. After satisfaction of its indebtedness, Chase is in possession of surplus funds totaling $207,963.97, plus any accrued interest.

12. The following parties have made an informal claim or hold an interest in said funds held by the Plaintiff, to wit:

    a. On October 2, 2015, the Department of the Treasury – Internal Revenue Service recorded a Notice of Federal Tax Lien encumbering the Property in the amount of $14,894.07 as recorded with the Land Records at Book 864, Page 1037. A true and accurate copy of the Federal Tax Lien is attached as **Exhibit E**.

    b. On December 14, 2017, the Department of the Treasury – Internal Revenue Service recorded a Notice of Federal Tax Lien encumbering the Property in the amount of $34,263.61 as recorded with the Land Records at Book 905, Page 1027. A true and accurate copy of the Federal Tax Lien is attached as **Exhibit F**.

    c. John Ennis, Esquire, counsel for the Carvers in connection with WC-2020-0372 has communicated to Plaintiff's counsel his potential claim in the surplus funds due to outstanding legal fees and costs owed in his representation of the Carvers.

    d. Oceanside Properties, LLC, the record owner of the Property has communicated to Plaintiff's counsel their potential claim in the surplus funds due to outstanding use and occupancy payments and legal fees and costs in connection with WD-2020-0405 and 4CA-2020-00473.

4

e. Chase has a potential claim in the surplus funds due to outstanding legal fees and costs that have accrued post foreclosure, including, but not limited to the legal fees and costs for bringing this action in conjunction with its attempt to determine and distribute the surplus.

## COUNT I – INTERPLEADER

13. Chase restates the foregoing allegations as if fully set forth herein.

14. Because numerous parties are claiming rights to the surplus funds; Chase is unable to make a proper distribution of the surplus funds.

15. Any attempt by Chase to distribute the surplus funds informally may result in possible claims against it.

**WHEREFORE,** JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC successor by merger to Chase Manhattan Mortgage Corporation, respectfully requests that this Court:

1. Order that all Defendants appear and prove their claims, if any, to the surplus funds;

2. Order that the Plaintiff be allowed to recover its costs, expenses and attorney's fees incurred in conjunction with this action and its attempt to determine and distribute the surplus funds;

3. Order that Chase may deposit the surplus funds, plus any accrued interest, less attorney's fees and costs incurred in this matter, into the Court for further determination;

4. Order that, after depositing the net surplus with the Court, Chase is discharged from all further liability concerning the disposition of the surplus funds;

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478     Document 1-1     Filed 11/18/24     Page 9 of 43 PageID #: 12

5.  Order that, after depositing the net surplus with the Court, Chase is dismissed as a party to this action;

6.  Determine the rights of the Defendants as to the surplus paid into the Court; and

7.  Grant any other and further relief as the Court deems just and proper.

Respectfully submitted,
**JPMORGAN CHASE BANK, N.A.**
**SUCCESSOR BY MERGER TO CHASE**
**HOME FINANCE, LLC SUCCESSOR BY**
**MERGER TO CHASE MANHATTAN**
**MORTGAGE CORPORATION,**

By its attorney,

*/s/ Erika L. Vogel*
Erika L. Vogel, Esq.
BBO No.: 660541
HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA 02458
Telephone: (617) 558-8427
Fax: (617) 243-4046
evogel@harmonlaw.com

October 11, 2024

6

Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal and Private Information**

**Any Document Marked As A True And Correct Copy**
**Has Also Been Redacted For This Purpose**

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 11 of 43 PageID #: 14

# Exhibit A

BOOK 323  PAGE 688    45405

## WARRANTY DEED

**KNOW ALL MEN BY THESE PRESENTS, that we, CHARLES HACHADORIAN, JR. and FLORENCE E. HACHADORIAN, both of the City of Warwick, County of Kent, State of Rhode Island, for consideration paid, hereby grant to ROBERT G. CARVER, JR. and LINDA A. CARVER, both of the Town of Narragansett, County of Washington, State of Rhode Island, their heirs and assigns forever, as TENANTS BY THE ENTIRETY, with WARRANTY COVENANTS, all that certain lot or parcel of land with the buildings and improvements thereon, located in the Town of Narragansett, County of Washington, State of Rhode Island, and bounded and described as follows:**

Those certain lots situated in the Town of Narragansett, County of Washington, in the State of Rhode Island and described as Lots No. 246 (Two Hundred Forty-Six) and 248 (Two Hundred Forty-Eight) on a plat of land entitled "METTATUXET BEACH Section Two in the Town of Narragansett, R.I., property of Norman Beauregard. Platted, December, 1955. Wilfred R. Easterbrooks, Civil Engineer, Scale 1" = 100'", and recorded in the Land Evidence Records of the Town of Narragansett, Rhode Island, in Plat Book No. 4, at Page 67, reference to which is hereby made for a further description.

BE ALL said measurements more or less or however otherwise the same may be bounded and described.

BEING further designated as Lots 246 and 248 on the Narragansett Tax Assessor's Plat N-G, as presently constituted.

BEING the same premises conveyed to CHARLES HACHADORIAN, JR. and FLORENCE E. HACHADORIAN by deed of CHARLES HACHADORIAN, JR., in his capacity as Executor and Devisee under the will of CHARLES HACHADORIAN, which deed is dated April 9, 1986 and recorded in Volume 185 at Page 331 of the Land Evidence Records of the Town of Narragansett.

MILLER, SCOTT,
HOWE & KELLEY
122 TOURO STREET
NEWPORT, RHODE ISLAND
02840
(401) 847-7500

323
680

→ Note:
— See
B+S
Deed 645/46

→ Note:
— See
Foreclosure
Deed 521/
1052

Case Number: WC-2021-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 13 of 43 PageID #: 16

BOOK 323   PAGE 689

SUBJECT to restrictions as set forth in Volume 44 at Page 434 and Volume 45 at Page 445, insofar as the same may still apply.

SUBJECT to taxes assessed as of December 31, 1993.

THIS TRANSFER IS SUCH THAT NO R.I.G.L. 44-30-71.3 WITHHOLDING IS REQUIRED AS SELLERS ARE RESIDENTS OF RI AS EVIDENCED BY AFFIDAVIT.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 30th day of November, 1994.

_Charles Hachadorian_
CHARLES HACHADORIAN, JR.

_Florence E. Hachadorian_
FLORENCE E. HACHADORIAN

STATE OF RHODE ISLAND
COUNTY OF NEWPORT

In NEWPORT on the 30th day of November, 1994 before me personally appeared CHARLES HACHADORIAN, JR. and FLORENCE E. HACHADORIAN, to me known and known by me to be the persons executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

_Michael W. Miller_
NOTARY:  MICHAEL W. MILLER
My commission expires:  7/1/95

Grantees Mailing Address:
15 South River Drive
Narragansett, RI  02882

469cb-2994/1

MILLER, SCOTT,
HOWE & KELLEY
122 TOURO STREET
NEWPORT, RHODE ISLAND
02840
(401) 847-7500

RECEIVED FOR RECORD
ON _12-1-94_ AT _11:58 A_ M
Witness: Mary M. Luk
Narragansett Town Clerk

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 14 of 43 PageID #: 17

# Exhibit B

CHASE MANHATTAN MORTGAGE CORPORATION        BOOK 367 PAGE 41
343 THORNALL ST.
EDISON, NJ 08837
ATTENTION: FINAL CERTIFICATION DEPT - 3 SOUTH

[Space Above This Line For Recording Data]



## MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPT. OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS MORTGAGE ("Security Instrument") is given on    August    25th    1997
The mortgagor is
ROBERT G CARVER, MARRIED
LINDA A CARVER, MARRIED

("Borrower").

This Security Instrument is given to
CHASE MANHATTAN MORTGAGE CORPORATION
which is organized and existing under the laws of    the State of New Jersey        , and whose address is

343 THORNALL ST.        EDISON, NJ 08837        ("Lender").
Borrower owes Lender the principal sum of
One Hundred Two Thousand, Four Hundred Fifty-Nine and 00/100        Dollars
(U.S. $    102,459.00        ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
September 1, 2027        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to
Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property
located in        WASHINGTON        County, Rhode Island:

See Attached Legal Description        367/41

— Note: see        — Note: see
B+S deed        Foreclosure
645/46        Deed 5911/1068

which has the address of

15 SOUTH RIVER DRIVE, NARRAGANSETT, RI 02882        ("Property Address");
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will
defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender
on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and
assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground
rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e)
yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions
of Paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at
any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 16 of 43 PageID #: 19

BOOK 367 PAGE 42



require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. §2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under Paragraph 22, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied; first, to any prepayment charges due under the Note; second, to amounts payable under Paragraph 2; third, to interest due, fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien, by or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.



Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraph 22 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.



Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478   Document 1-1   Filed 11/18/24   Page 17 of 43 PageID #: 20

BOOK 367 PAGE 43

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agreed to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

RHODE ISLAND VA MORTGAGE
C-3803 Page 3 of 5 (2/96)
Replaces Rev. 1/96



BOOK 367 PAGE 44

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **V.A. Guaranteed Loan Covenant.** If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Paragraph 17 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

a) **Late Charge:** At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue monthly payment, when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

b) **Guaranty:** Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

c) **Transfer of the Property:** If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("Assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code. An authorized transfer ("assumption") of the property shall also be subject to the following:

(i) Assumption Funding Fee: A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the mortgagee or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the mortgagee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(ii) Assumption Processing Charge: Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the mortgagee or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the lesser of the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies or any maximum prescribed by applicable State law.

(iii) Assumption Indemnity Liability: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not

RHODE ISLAND VA MORTGAGE
C-3855 Page 4 of 5 (7/94)
System Rev. 1/99

BOOK 367 PAGE 45

less than 30 days from the date this notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Paragraph 14. Lender shall publish notice of sale, and the Property shall be sold in a manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
The following riders are attached:
NO RIDERS ATTACHED

Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loan secured by this Security Instrument:

| | | |
|---|---|---|
| Broker Fees | $ | |
| Origination–Discount Fees (points) | $ | 640.37 |
| Application Fees | $ | .00 |
| Closing Preparation Fees | $ | .00 |

As provided in R.I.G.L. §34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

AS TO ALL BORROWERS

ROBERT G CARVER                    LINDA A CARVER

_____           _____

_____           _____

_____           _____

[Space Below This Line For Acknowledgment]

STATE OF RHODE ISLAND          NEWPORT          County ss:

On this 25th day of August, in 1997
in said County, before me personally appeared
ROBERT G CARVER, MARRIED
LINDA A CARVER, MARRIED

person(s) executing the foregoing instrument and acknowledged said execution to be    his/her/their    free act and deed.

each and all to me known and known to me to be the

MICHAEL W. MILLER
my commission expires: 7/1/01

RHODE ISLAND VA MORTGAGE
C-3803 Page 5 of 5 (2/96)

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 20 of 43 PageID #: 23

BOOK 367 PAGE 46

## SCHEDULE A

Those certain lots situated in the Town of Narragansett, County of Washington, in the State of Rhode Island and described as Lots No. 246 (Two Hundred Forty-Six) and 248 (Two Hundred Forty-Eight) on a plat of land entitled "METTATUXET BEACH Section Two in the Town of Narragansett, R.I., property of Norman Beauregard. Platted, December, 1955. Wilfred R. Easterbrooks, Civil Engineer, Scale 1" = 100", and recorded in the Land Evidence Records of the Town of Narragansett, Rhode Island, in Plat Book No. 4, at Page 67, reference to which is hereby made for a further description.

BE ALL said measurements more or less or however otherwise the same may be bounded and described.

BEING further designated as Lots 246 and 248 on the Narragansett Tax Assessor's Plat N-G, as presently constituted.

SUBJECT to restrictions as set forth in Volume 44 at Page 434 and Volume 45 at Page 445, insofar as the same may still apply.

Appurtenant easement in common with others as set forth in Volume 49 at Page 244.

Appurtenant rights and subject to obligations in common with others as set forth in Volume 49 at Page 240.

SUBJECT to utility easement as set forth in Volume 40 at Page 445.

SUBJECT to taxes assessed as of December 31, 1994 and December 31, 1995 by the Tax Assessor of the Town of Narragansett.

Property Address:

15 South River Drive
Narragansett, Rhode Island  02882

467cb-2994/1

RECEIVED FOR RECORD
ON ___8-29-97___ AT ___1:07 pm___
WITNESS, Mary M. Beck, CMC/AAE
Narragansett Town Clerk

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 21 of 43 PageID #: 24

# Exhibit C

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 22 of 43 PageID #: 25

BK: 916 PG: 661
INST: 2817

Recording Requested By/Return To:
JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203

This Instrument Prepared By:
JPMORGAN CHASE BANK, N.A.
3415 VISION DRIVE
COLUMBUS, OHIO 43219-6009

[Space Above This Line For Recording Data]

## LOAN MODIFICATION AGREEMENT

Loan Number:

916
661

Borrower ("I")[1]: ROBERT G. CARVER AKA ROBERT G. CARVER, JR. AND LINDA A. CARVER
whose address is 1200 RESERVOIR AVENUE C/O JOHN ENNIS, ESQ., CRANSTON, RHODE
ISLAND 02920-0000
Lender ("Lender"): JPMORGAN CHASE BANK, N.A. S/B/M CHASE HOME FINANCE LLC, S/B/M
CHASE MANHATTAN MORTGAGE CORPORATION whose address is CHASE, 700 KANSAS,
FLOOR 2, MONROE, LOUISIANA 71203-4774
Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): AUGUST 25, 1997
Loan Number:                    ("Loan")
Property Address:              CARVER DR, NARRAGANSETT, RHODE ISLAND 02882 ("Property")
LEGAL DESCRIPTION:
THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF WASHINGTON, TOWN OF
NARRAGANSETT AND STATE OF RHODE ISLAND, DESCRIBED AS FOLLOWS: THOSE
CERTAIN LOTS SITUATED IN THE TOWN OF NARRAGANSETT COUNTY OF WASHINGTON, IN
THE STATE OF RHODE ISLAND AND DESCRIBED AS LOTS NO. 246 (TWO HUNDRED FORTY-
SIX) AND 248 (TWO HUNDRED FORTY-EIGHT) ON A PLAT OF LAND ENTITLED "METTATUXET

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

WF101 LOAN MODIFICATION AGREEMENT - CHAMP    ver. 01_39_2018_11_00_29        CR10035
                                                                            WF101
                                                                          (page 1 of 8 pages)

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 23 of 43 PageID #: 26

BK: 916 PG: 662
INST: 2817

Loan Number ▮▮▮▮▮▮

BEACH SECTION TWO IN THE TOWN OF NARRAGANSETT, R.I. PROPERTY OF NORMAN
BEAUREGARD. PLATTED, DECEMBER 1955. WILFRED R. EASTERBROOKS, CIVIL ENGINEER,
SCALE 1" = 100' , AND RECORDED IN THE LAND EVIDENCE RECORDS OF THE TOWN OF
NARRAGANSETT, RHODE ISLAND, IN PLAT BOOK NO. 4, AT PAGE 67, REFERENCE TO
WHICH IS HEREBY MADE FOR A FURTHER DESCRIPTION. BE ALL SAID MEASUREMENTS
MORE OR LESS OR HOWEVER OTHERWISE THE SAME MAY BE BOUNDED AND DESCRIBED.
BEING FURTHER DESIGNATED AS LOTS 246 AND 248 ON THE NARRAGANSETT TAX
ASSESSORS PLAT N-G, AS PRESENTLY CONSTITUTED. SUBJECT TO RESTRICTIONS AS
SET FORTH IN VOLUME 44 AT PAGE 434 AND VOLUME 45 AT PAGE 445, INSOFAR AS THE
SAME MAY STILL APPLY. APPURTENANT EASEMENT IN COMMON WITH OTHERS AS SET
FORTH IN VOLUME 40 AT PAGE 244. APPURTENANT RIGHTS AND SUBJECT TO
OBLIGATIONS IN COMMON WITH OTHERS AS SET FORTH IN VOLUME 40 AT PAGE 240.
SUBJECT TO UTILITY EASEMENT AS SET FORTH IN VOLUME 40 AT PAGE 445. SUBJECT TO
TAXES ASSESSED AS OF DECEMBER 31, 1994 AND DECEMBER 31. 1995 BY THE TAX
ASSESSOR OF THE TOWN OF NARRAGANSETT. PARCEL ID: N/G/ 246/ /

REFERENCE NUMBERS OF DOCUMENTS MODIFIED:
RECORDED AUGUST 29, 1997 BOOK 367 PAGE 41 INSTRUMENT NO. 61848

Tax Parcel No: N/G/ 246/ /

If my representations in Section 1 continue to be true in all material respects, then the provisions of
Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and
supplement (i) the Mortgage on the Property, and (i) the Note secured by the Mortgage. The
Mortgage and Note together, as may previously have been amended, are referred to as the "Loan
Documents." Capitalized terms used in this Agreement have the meaning given in the Loan
Documents.

If required, I have provided confirmation of my financial hardship and documents to allow verification
of all of my income to determine whether I qualify for the offer described in this Agreement. This
Agreement will not take effect unless and until the Lender signs it.

1.   **My Representations.**
     I represent to the Lender and agree:

     A.  I am experiencing a financial hardship, and as a result, am either in default under the Loan
         Documents or a default is imminent.

     B.  The Property is neither in a state of disrepair, nor condemned.

     C.  There has been no change in the ownership of the Property since I signed the Loan
         Documents.

     D.  I am not a party to any litigation involving the Loan Documents, except to the extent I may be
         a defendant in a foreclosure action.

     E.  All documents and information I provide pursuant to this Agreement are true and correct.

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

1:24-cv-00478     Document 1-1     Filed 11/18/24     Page 24 of 43 PageID #: 27

BK: 916 PG: 663
INST: 2817

Loan Number ████████

F. If required, I have provided documentation for all income that I earn.

2. **The Modification.**
The Loan Documents are hereby modified as of MARCH 01, 2018 ("Modification Effective Date"), and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

A. The Maturity Date will be: FEBRUARY 01, 2048.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments. The new principal balance of my Note is $83,181.97 ("New Principal Balance").

C. $7,906.73 of the New Principal Balance shall be deferred ("Deferred Principal Balance"), and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance," and this amount is $55,275.24.

The Interest Bearing Principal Balance will re-amortize over 360 months.

Interest will begin to accrue as of FEBRUARY 01, 2018. The first new monthly payment on the New Principal Balance will be due on MARCH 01, 2018, and monthly on the same date thereafter.

This Section 2.C does not apply to the repayment of any Deferred Principal Balance and such a balance will be repaid in accordance with Section 2.D. My payment schedule for the modified Loan is as follows:

Interest will accrue on the Interest Bearing Principal Balance at the rate of 4.000% annually. The monthly payment amount for principal and interest will be $263.99, which is an amount sufficient to amortize the Interest Bearing Principal Balance over a period of 360 months.

The Deferred Principal Balance of $7,906.73 will be due on the Maturity Date unless due earlier in accordance with Section 2.D.

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

D. Any amounts still due under the Loan Documents, will be paid by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire Interest Bearing Principal Balance, or the Maturity Date.

WF101 LOAN MODIFICATION AGREEMENT - CHAMP     ver. 01_30_2018_11_08_20

CR19636
WF101
(page 3 of 6 pages)

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 25 of 43 PageID #: 28

BK: 916 PG: 664
INST: 2817

Loan Number ███████████

E.  I will be in default if (i) the monthly payments are not made in full on the date they are due, or (ii) I do not comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the Interest Bearing Principal Balance will be the rate set forth in Section 2.C., and there will be no interest payable on the Deferred Principal Balance, if any.

F.  If I make a partial prepayment of principal, the Lender may apply that partial prepayment first to any remaining Deferred Principal Balance before applying such partial prepayment to other amounts due under this Agreement or the Loan Documents.

3.  **Additional Agreements.** I agree to the following:

A.  That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

B.  To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.  That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by the Mortgage will come due. If payment of these sums is not made prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

WF101 LOAN MODIFICATION AGREEMENT - CHAMP    ver. 01_30_2018_11_08_20

CR10634
WF101
(page 4 of 8 pages)

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 26 of 43 PageID #: 29

BK: 916 PG: 665
INST: 2817

Loan Number ████████

G. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I. That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

J. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

K. That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

L. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

WF101 LOAN MODIFICATION AGREEMENT - CHAMP    ver. 01_30_2018_11_00_30

CR10036
WF101
(page 5 of 9 pages)

Loan Number

**TO BE SIGNED BY BORROWER ONLY**

BORROWER SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. S/BM CHASE HOME FINANCE LLC, S/BM CHASE MANHATTAN MORTGAGE CORPORATION And ROBERT G. CARVER AKA ROBERT G. CARVER, JR. AND LINDA A. CARVER, LOAN NUMBER 1814063786 WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2018.

In Witness Whereof, the Borrower(s) have executed this agreement

Borrower:    ROBERT G. CARVER AKA ROBERT G. CARVER, JR.          Date  6/16/18
(Must Be Signed Exactly as Printed)

Borrower:    LINDA A. CARVER          Date  6/16/18
(Must Be Signed Exactly as Printed)

State of RHODE ISLAND
County of Washington
Enter County Here

In Narragansett                                          in said County on the 16th day of
June                  2018                before me personally appeared ROBERT G.
CARVER AKA ROBERT G. CARVER, JR. and LINDA A. CARVER, each and all to me known, and known by
me to be the party(ies) executing the foregoing instrument, and he/she/they acknowledged said instrument, by
executed to be his/her/their free act and deed.

Signature of Notary

Title: Notary Public

My Commission Expires:  June 24, 2021

WF101 LOAN MODIFICATION AGREEMENT - CHAMP   ver. 01_30_2018_11_00_00                    CR10038
                                                                                        WF101
                                                                                        (Page 8 of 8 pages)

BK: 916 PG: 667
INST: 2817

Loan Number ████

**TO BE SIGNED BY LENDER ONLY**

LENDER SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK,
N.A. S/B/M CHASE HOME FINANCE LLC, S/B/M CHASE MANHATTAN MORTGAGE CORPORATION
And ROBERT G. CARVER AKA ROBERT G. CARVER, JR. AND LINDA A. CARVER, LOAN NUMBER
1814063785 WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2018

In Witness Whereof, the Lender has executed this Agreement.

Lender

JPMORGAN CHASE BANK, N.A. S/B/M CHASE HOME FINANCE LLC, S/B/M CHASE MANHATTAN
MORTGAGE CORPORATION

By: _____

Printed Name:    Robert Starr
                 Vice President

Date: 8 - 2 - 2018 _____

WF101 LOAN MODIFICATION AGREEMENT - CHAMP    ver. 01_30_2018_11_00_20                    CR19036
                                                                                          WF101
                                                                                    (page 7 of 8 pages)

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

1:24-cv-00478     Document 1-1     Filed 11/18/24     Page 29 of 43 PageID #: 32

BK: 916 PG: 668
INST: 2817

Loan Number ███████

State of MICHIGAN
County of OAKLAND

Acknowledged by **Robert Starr** Vice President of JPMORGAN CHASE
BANK, N.A. S/BM CHASE HOME FINANCE LLC, S/BM CHASE MANHATTAN MORTGAGE CORPORATION,
a national banking association before me on the _____ day of _____ 2018

Signature _____

Printed name **Elizabeth Bash**

Notary public, State of MICHIGAN, County of **Macomb**

My commission expires **MAY 09 2020**

Acting in the County of OAKLAND

ELIZABETH BASH
Notary Public, State Of Michigan
County of Macomb
My Commission Expires May 09, 2020
Acting in the County of _____

WF101 LOAN MODIFICATION AGREEMENT - CHAMP     ver. 01_30_2018_11_00_30

CR10030
WF101
(page 5 of 6 pages)

RECEIVED FOR RECORD
Aug 16, 2018 01:08:24P
ANNE M. IRONS
TOWN CLERK
NARRAGANSETT, RI

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 30 of 43 PageID #: 33

# Exhibit D

Case Number: WC-2021-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 31 of 43 PageID #: 34

BK: 944 PG: 862
INST: 828

014932

RHODE ISLAND
REAL ESTATE CONVEYANCE TAX

TAX $ 1320.20
DATE 3-10-20
RECORDER
CITY/TOWN OF Narra

Property Address: 15 South River Drive, Narragansett, RI 02882

### FORECLOSURE DEED

JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation a national association duly established under the laws of the United States of America and having its usual place of business at 3415 Vision Drive, Columbus, OH 43219
the current holder by assignment of a mortgage

given by   Robert G. Carver and Linda A. Carver

to         Chase Manhattan Mortgage Corporation

dated August 25, 1997 and recorded with the Records of Land Evidence in the Town of Narragansett in Book 367, Page 41 and modified by a certain modification agreement recorded August 16, 2018 with said records in Book 916, Page 661, by the power conferred by said mortgage and every other power, for two hundred eighty-seven thousand and 00/100 ($287,000.00) DOLLARS paid, grants to Steven Horowitz of 6 damian Ct. , North Providence, RI 02911, the premises conveyed by said mortgage, viz:

**See legal description attached hereto as Exhibit A and incorporated herein by reference.**

Meaning and intending to convey, and hereby conveying, the premises conveyed to this Mortgagee in that certain mortgage deed as set forth above.  The premises were sold at foreclosure auction on September 17, 2019.  No withholding tax is required under the provisions of R.I.G.L. 44-30-71.3, in that no net proceeds were payable to the mortgagor(s).

Pursuant to Rhode Island Life Safety Code (RILSC) 24.6.3.1.4.1(5), this conveyance is exempt from the provisions of RILSC 24.6.3.1 as the property is being transferred pursuant to a

Page 1

Case Number: WC-2021-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 32 of 43 PageID #: 35

BK: 944 PG: 863
INST: 828

foreclosure sale, and no smoke detector and carbon monoxide detector certification is required.

This conveyance is made subject to all taxes, assessments, and other encumbrances which may constitute a lien thereon surviving said foreclosure sale, and is conveyed subject to any restrictions of record and rights of tenants in possession, if any, as shall notwithstanding this provisions, constitute valid liens or encumbrances thereon after said sale.

WITNESS the execution of said national association this *25* day of *October*, 2019.

JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation

By ___*Nijaz Pajic*___ 10-25-2019
        Nijaz Pajic
        Vice President

Page 2                                                                16256

BK: 944 PG: 864
INST: 828

The State of _____FLORIDA_____

_____DUVAL_____ County, ss.                                    October 25 2019

On this **25** day of _October_____ 20**19**, before me, the undersigned notary public,

personally appeared _____Nijaz Pajic_____, proved to me through satisfactory

evidence of identification, which were **Personally Known** (form of identification), to be the person

whose name is signed on the preceding or attached document, and acknowledged to me that (he)

(she) signed it voluntarily for its stated purpose as the free act and deed of JPMorgan Chase Bank,

N.A., successor by merger to Chase Home Finance LLC, successor by merger to Chase Manhattan

Mortgage Corporation.


Capacity: (as    **Vice President**_____

for JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, successor

by merger to Chase Manhattan Mortgage Corporation)


_____ 10-25-2019       (Affix Seal)

Notary Signature    Akhira Massalene

My commission expires: _04·03·2021_

AKHIRA MASSALENE
Notary Public - State of Florida
Commission # GG 089670
My Comm. Expires Apr 3, 2021

**Notary Public State
of Florida**

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 34 of 43 PageID #: 37

BK: 944 PG: 865
INST: 828

Exhibit A

Those certain lots situated in the Town of Narragansett, County of Washington, in the State of Rhode Island and described as Lots No. 246 (Two Hundred Forty-Six) and 248 (Two Hundred Forty-Eight) on a plat of land entitled "METTATUXET BEACH Section Two in the Town of Narragansett, R.I., property of Norman Beauregard. Platted, December, 1955. Wilfred R. Easterbrooks, Civil Engineer, Scale 1" = 100'", and recorded in the Land Evidence Records of the Town of Narragansett, Rhode Island, in Plat Book No. 4, at Page 67, reference to which is hereby made for a further description. BE ALL said measurements more or less or however otherwise the same may be bounded and described. BEING further designated as Lots 246 and 248 on the Narragansett Tax Assessor's Plat N-G, as presently constituted. SUBJECT to restrictions as set forth in Volume 44 at Page 434 and Volume 45 at Page 445, insofar as the same may still apply. Appurtenant easement in common with others as set forth in Volume 49 at Page 244. Appurtenant rights and subject to obligations in common with others as set forth in Volume 49 at Page 240. SUBJECT to utility easement as set forth in Volume 40 at Page 445. SUBJECT to taxes assessed as of December 31, 1994 and December 31, 1995 by the Tax Assessor of the Town of Narragansett.

Plat N-G
Lot 248

16256

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 35 of 43 PageID #: 38

# Exhibit E

BK. R. PG. 1037
5*2.

| Form 668 (Y)(c) | 11874 | Department of the Treasury - Internal Revenue Service |
| (Rev. February 2004) | | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer** LINDA A CARVER

**Residence**   15 S RIVER DR
NARRAGANSETT, RI 02882-2700

EC41
1037

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX- | 09/13/2010 | 10/13/2020 | |
| 1040 | 12/31/2008 | XXX-XX- | 03/07/2011 | 04/06/2021 | |

RECEIVED FOR RECORD
Oct 15 2015 05:15:28P
ANNE M. IRONS
TOWN CLERK
NARRAGANSETT, RI

| Place of Filing | TOWN CLERK NARRAGANSETT TOWN HALL NARRAGANSETT, RI 02882 | Total $ | |

This notice was prepared and signed at    MANHATTAN, NY    , on this

the   02nd   day of   October   , 2015 .

| Signature   *Cheryl Cordew*  for P.A. BELTON | Title ACS SBSE (800) 829-3903 | |

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 2 - Internal Revenue Service TBA Copy

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Case Number: WC-2021-0581
Filed in Washington County Superior Court
Submitted: 10/11/2024 4:57 PM
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 37 of 43 PageID #: 40

# Exhibit F

Case Number: WC-2024-0581
Filed in Washington County Superior Court
Submitter:
Envelope: 4838097
Reviewer: Patrick K

Case 1:24-cv-00478    Document 1-1    Filed 11/18/24    Page 38 of 43 PageID #: 41

BK: 905 PG: 1022
INST: 4731

11874

Department of the Treasury - Internal Revenue Service

Form 668 (Y)(c)
(Rev. February 2004)

# Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer ROBERT G & LINDA A CARVER JR

Residence      15 S RIVER DR
               NARRAGANSETT, RI 02882-2700

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | | 02/13/2017 | 03/15/2027 | |

905/
1022

| Place of Filing | TOWN CLERK NARRAGANSETT TOWN HALL NARRAGANSETT, RI 02882 | Total | $ |
|---|---|---|---|

This notice was prepared and signed at      MANHATTAN, NY                    , on this,

the   14th   day of   December    2017

RECEIVED FOR RECORD
Dec 27, 2017 10:27:52A
ANNE M. IRONS
TOWN CLERK
NARRAGANSETT, RI

| Signature   Joan Flach   for S. MCGUIGAN | Title ACS SBSE (800) 829-3903 | |
|---|---|---|

NOTE   Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.

**Español:** Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.

**Português:** Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# N O T I C E

## You have a case in the Rhode Island state court system.

## You have the right to an interpreter at no cost to you.

Rhode Island Supreme Court Executive Order 2012-05 states that when a Limited-English Proficient (LEP) person appears in court, the Rhode Island Judiciary will provide a free authorized interpreter for the defendant, plaintiff, witness, victim, parent of a juvenile, or someone with a significant interest in the court proceeding. This interpreting service is provided at no cost to the parties and in all types of cases, both civil and criminal. Court interpreters work in all the courthouses of the Rhode Island state court system.

**To schedule an interpreter for your day in court, you have the following options:**

1.    **Call the Office of Court Interpreters at (401) 222-8710, or**

2.    **Send an email message to interpreterfeedback@courts.ri.gov, or**

3.    **Visit the interpreters' office to schedule an interpreter:**

> **The Office of Court Interpreters**
> **Licht Judicial Complex**
> **Fourth Floor, Room 401**
> **250 Benefit Street**
> **Providence, RI 02903**

**When requesting an interpreter, please provide the following information:**

- **The name and number of your case**
- **The language you are requesting**
- **The date and time of your hearing**
- **The location of your hearing**
- **Your name and a telephone number where we can reach you or your lawyer**

For more information in Portuguese, Russian, and Spanish, including a listing of court forms that are available in Spanish, please visit our website on the internet:

http://www.courts.ri.gov/Interpreters/englishversion/default.aspx.

To request a translation of this notice into any other language, please call the Office of Court Interpreters at (401) 222-8710. It would be helpful to have an English speaker with you when you call.

The Rhode Island Judiciary is committed to making the courts accessible to all.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
**Español:** Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
**Português:** Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# A V I S O

## Usted tiene un caso en el sistema judicial de Rhode Island.

## Usted tiene el derecho a tener un intérprete sin costo para usted.

La Orden Ejecutiva 2012-05 del Tribunal Supremo de Rhode Island dicta que cuando una persona que tiene un dominio limitado del inglés (LEP) comparece ante la corte, el Sistema Judicial de Rhode Island le proveerá un intérprete autorizado gratis sea el acusado/demandado, demandante, testigo, víctima, padre de un menor de edad alguien que tenga con un interés importante en el proceso de la corte. Este servicio de interpretación se le proveerá sin costo alguno a los participantes en toda clase de caso, sea civil o penal.

Los intérpretes judiciales trabajan en todos los tribunales del Sistema Judicial de Rhode Island.

**Para solicitar un intérprete para su comparecencia en el tribunal, usted tiene las siguientes opciones:**

1. **Llamar a la Oficina de Intérpretes en el tribunal al 401-222-8710 ;**

2. **Mandar un correo electrónico a interpreterfeedback@courts.ri.gov; o**

3. **Presentarse a la Oficina de Intérpretes para solicitar un intérprete:**

> **The Office of Court Interpreters**
> **Licht Judicial Complex**
> **Cuarto Piso, Oficina 401 A-B**
> **250 Benefit Street**
> **Providence, RI 02903**

**Al solicitar un intérprete, por favor provea la siguiente información:**

- **El nombre y el número de su caso**

- **El idioma que solicita**

- **La fecha y hora de su audiencia**

- **Dónde va a tomar lugar su audiencia**

- **Su nombre y número de teléfono por el cual nos podamos poner en contacto con usted o con su abogado.**

Para obtener más información en portugués, ruso o español, incluyendo una lista de formularios de la corte que están disponibles en español, visite nuestra página de internet:

> http://www.courts.ri.gov/Interpreters/englishversion/default.aspxi.

Para solicitar la traducción de este aviso en cualquier otro idioma, por favor llame a la oficina de intérpretes al (401) 222-8710. Ayudaría si usted puede estar en compañía de una persona que habla inglés cuando llame.

El sistema jurídico de Rhode Island se compromete a proporcionar a todas las personas mejor acceso a los tribunales.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.

**Camboyano:** SAMPLE: [Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.]

**Español:** Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.

**Português:** Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.



# NOTIFICAÇÃO

## V. Ex.ª tem um processo em curso no sistema judiciário do Estado de Rhode Island,

## V. Ex.ª tem direito aos serviços gratuitos de um intérprete.

A Ordem Executiva 2012-05 do Supremo Tribunal de Rhode Island prevê que quando uma pessoa com conhecimentos limitados da língua inglesa (*Limited-English Proficient*) (LEP) comparece em tribunal, a Administração Judiciária de Rhode Island disponibiliza-lhe gratuitamente os serviços de um intérprete autorizado a um réu, autor, testemunha, vítima, pai ou mãe de um menor ou alguém com interesse significativo no processo judicial. O serviço de intérprete é prestado gratuitamente às partes e em todos os tipos de processos, sejam eles civis ou penais. Os intérpretes do tribunal trabalham em todos os tribunais do sistema judiciário do Estado de Rhode Island.

**Para agendar os serviços de um intérprete para o seu dia no tribunal, tem as seguintes opções:**

1.  Telefonar para o Gabinete de Intérpretes Judiciais através do n.º (401) 222-8710, ou

2.  Enviar uma mensagem de correio eletrónico para interpreterfeedback@courts.ri.gov, ou

3.  Deslocar-se ao gabinete de intérpretes para agendar os serviços de um intérprete:

    > **Gabinete de Intérpretes Judiciais**
    > **Complexo Judicial Licht**
    > **Quarto Piso, Sala 401**
    > **250 Benefit Street**
    > **Providence, RI 02903**

**Quando solicitar os serviços de um intérprete deve fornecer os seguintes dados:**

- **O nome e número do seu processo**
- **O idioma que solicita**
- **A data e hora da sua audiência**
- **O local da sua audiência**
- **O seu nome e um número de telefone para o podermos contactar a si ou ao seu advogado**

Para obter mais informações em português, russo e espanhol, incluindo uma lista dos formulários judiciais disponíveis em espanhol, visite o nosso website na internet: http://www.courts.ri.gov/Interpreters/englishversion/default.aspxi.

Para solicitar uma tradução desta notificação para qualquer outro idioma, telefone para o Gabinete de Intérpretes Judiciais através do número (401) 222-8710. Recomenda-se que esteja acompanhado por alguém que fale inglês quando fizer a chamada.

A Administração Judiciária de Rhode Island está empenhada em tornar os tribunais acessíveis para todos.

Gabinete de Intérpretes Judiciais
Complexo Judicial Licht
Quarto Piso, Sala 401
250 Benefit Street
Providence, RI 02903

មើលសេចក្ដីជូនដំណឹងនេះជាភាសាខ្មែរ រអេស្បាញ៉ូ និងព័ត៌មានបញ្ចូលនៅលើទំព័រដែលបានភ្ជាប់។

សេចក្ដីជូនដំណឹង

 លោកអ្នកមានបណ្ដឹងនៅក្នុងប្រព័ន្ធតុលាការនៃរដ្ឋ **Rhode Island**។

 លោកអ្នកមានសិទ្ធិស្នើសុំអ្នកបកប្រែដោយឥតគិតថ្លៃសម្រាប់ខ្លួនឯង។



ដីកាប្រតិបត្តិរបស់តុលាការកំពូលនៃ Rhode Island (Rhode Island Supreme Court Executive Order) លេខ 2012-05 បានចែងថានៅពេលបុគ្គលដែលមានចំណេះដឹងភាសាអង់គ្លេសមានកំណត់ (LEP) បង្ហាញខ្លួននៅក្នុងតុលាការ តុលាការនៃ Rhode Island និងផ្ដល់អ្នកបកប្រែដែលបានអនុញ្ញាតដោយឥតគិតថ្លៃសម្រាប់ក្នុងចោទ ដើមចោទ សាក្សី ជនរងគ្រោះ មាតាបិតារបស់អនីតិជន ឬអាណាព្យាបាលដែលតាក់តែងក្នុងនាមសំខាន់នៅក្នុងដំណើរការតុលាការ។ សេវាកម្មបកប្រែនេះ ត្រូវបានផ្ដល់ជូនដោយឥតគិតថ្លៃសម្រាប់គូភាគី និងនៅគ្រប់ប្រភេទនៃបណ្ដឹង ទាំងរដ្ឋប្បវេណី និងព្រហ្មទណ្ឌ។ អ្នកបកប្រែក្នុងតុលាការធ្វើការនៅគ្រប់ផ្នែកការងារអស់របស់ប្រព័ន្ធតុលាការនៃរដ្ឋ Rhode Island។ ដើម្បីប្រាកដពេលផលអ្នកបកប្រែសម្រាប់ថ្ងៃធ្វើសេវាការអស់របស់អ្នក លោកអ្នកមានជម្រើសសូចនាខាងក្រោម ៖

1.  ទូរស័ព្ទមកកាន់ការិយាល័យអ្នកបកប្រែប្រចាំតុលាការតាមរយៈលេខ (401) 222-8710 ឬ
2.  ផ្ញើអ៊ីម៉ែលទៅកាន់ **interpreterfeedback@courts.ri.gov** ឬ
3.  ទៅកាន់ការិយាល័យអ្នកបកប្រែដើម្បីប្រាកដពេលផលអ្នកបកប្រែ ៖

> **The Office of Court Interpreters**
> **Licht Judicial Complex**
> **Fourth Floor, Room 401**
> **250 Benefit Street**
> **Providence, RI 02903**

នៅពេលស្នើសុំអ្នកបកប្រែ សូមផ្ដល់នូវព័ត៌មានខ្លះខាងក្រោម ៖

- ឈ្មោះ និងលេខបណ្ដឹងរបស់លោកអ្នក
- ភាសាដែលលោកអ្នកស្នើសុំ
- កាលបរិច្ឆេទ និងម៉ោងនៃសវនាការរបស់លោកអ្នក
- ទីតាំងនៃសវនាការរបស់លោកអ្នក
- ឈ្មោះ និងលេខទូរស័ព្ទរបស់លោកអ្នកដែលយើងខ្ញុំអាចទាក់ទងទៅលោកអ្នក ឬបុគ្គលិកលោកអ្នកបាន

សម្រាប់ព័ត៌មានបន្ថែមជាភាសាជាតិទូលាយ។ រូស៊ី និងអេស្បាញ៉ូ រួមទាំងលម្អិតទម្រង់បែបបទតុលាការដែលមានជាភាសាអេស្បាញ៉ូនោះ សូមចូល ទៅកាន់គេហទំព័រយើងខ្ញុំនៅលើអ៊ីនធឺណិត ៖

http://www.courts.ri.gov/Interpreters/englishversion/default.aspx។

ដើម្បីស្នើសុំការបកប្រែសេចក្ដីជូនដំណឹងនេះជាភាសាណាមួយដោយឥតថ្លៃ សូមទូរស័ព្ទមកកាន់ការិយាល័យអ្នកបកប្រែប្រចាំតុលាការតាមរយៈលេខ (401) 222-8710។ វិធានការបំរាប់ដែលត្រូវអោយអ្នកតំរូវយកភាសាអង់គ្លេសបានវាយលោកអ្នកនៅពេលដែលលោកអ្នកទូរស័ព្ទចូលមា។

តុលាការ Rhode Island រក្សាជាថ្មីឲ្យតុលាការអាចប្រើប្រាស់បានសម្រាប់មនុស្សគ្រប់គ្នា។

ការិយាល័យអ្នកបកប្រែប្រចាំតុលាការ
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903



HUGHES LEGAL SUPPORT
P. O. BOX 20617
CRANSTON, RI 02920

UNITED STATES INTERNAL REVENUE SERVICE
C/O US DEPARTMENT OF JUSTICE
TAX DIVISION, CIVIL TRIAL SECTION
P. O. BOX 55, BEN FRANKLIN STATION
WASHINGTON, DC 20044

X-RAYED #3
OCT 2 8 2024
DOJ MAIL ROOM

9589 0710 5270 0718 0849 48

**CERTIFIED MAIL**



*Retail*

RDC 99

20044

U.S. POSTAGE PAID
FCM LG ENV
CRANSTON, RI 0292(
OCT 22, 2024

**$12.66**

S2323A500253-10



**DOJ-FASS**

Tracking No: 9589071052700718084948

TAX/PO BOX 55
1 CON - MAILROOM: 1275 FIRST ST, NE
20002